**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION**

| | | |
|---|---|---|
| E.G., by his Next Friend Vania Gonzalez, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | No. 1:16-CV-0068-BL |
| BARRY BOND, et al., | § § § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION**

Under consideration is Barry Bond's Amended 12(b)(6) Motion to Dismiss for Plaintiffs' Failure to State a Claim upon which Relief may be Granted (doc. 11).  The fully briefed motion is ready for ruling.  This action has been referred pursuant to 28 U.S.C. § 636(b) and Second Amended Special Order No. 3-301 that became effective on April 26, 2016.  Because the parties have not consented to have all further proceedings in this case conducted by a magistrate judge, the undersigned issues this report and recommendation and directs that this case be reassigned to Senior District Judge Sam R. Cummings in accordance with Second Amended Special Order No. 3-301.

**I.  BACKGROUND**[1]

Four minor[2] students (TP, EG, NM, and MD) of the Abilene Independent School District ("AISD") bring suit against a School Resource Officer ("SRO"), Barry Bond, for four separate incidents in which he allegedly used unreasonable physical force and restraint against them.  Pls.'

---

[1]The factual background is either uncontested or viewed in a light most favorable to Plaintiffs in accordance with the applicable standard for considering motions to dismiss.

[2]At the time of the events, TP was sixteen, MD was fifteen, NM was twelve, and EG was six.  Pls.' First Am. Compl. ¶ 3.

First Am. Compl. (doc. 10) ¶ 1.  Plaintiffs allege that Officer Bond:

    (1)    Placed TP in a choke hold and sprayed him with pepper spray in March 2014.

    (2)    Used a "pain compliance" maneuver against EG in May 2014.

    (3)    Used a choke hold against NM and then handcuffed and detained him in February 2015.

    (4)    Repeatedly slammed MD against a concrete wall and to the ground before handcuffing and detaining him in late February or early March 2015.

*Id.* ¶ 3.  Plaintiffs further allege that the City of Abilene ("the City") and AISD are municipally liable for Officer Bond's actions.  *Id.* ¶ 5.

At the time of the incidents giving rise to this litigation, Officer Bond was an employee of the City of Abilene Police Department ("APD") and, as alleged by Plaintiffs, he assaulted them "[w]hile acting in his capacity as a SRO."  *Id.* ¶ 2.  The APD "employed Officer Bond as a peace officer" and in accordance with "a written agreement with AISD implementing its SRO program, APD and AISD stationed Officer Bond at the school."  *Id.* ¶ 4.  Pursuant to that written agreement, "AISD used Officer Bond as a SRO in the Jefferson Center, a reassignment and alternative school in AISD where the incidents occurred" and according to Plaintiffs, "Officer Bond was acting under color of state law as an agent of the City of Abilene and AISD" at all relevant times.  *Id.* ¶ 13.

"The main purpose of the SRO program is to strive to provide a secure campus for the students, faculty and staff of the Abilene Independent School District."  *See* School Resource Officer Agreement ("the Agreement" or "the SRO Agreement"), attached to Pls.' First Am. Compl. as Ex. B, ¶ 5.  To facility that purpose, "the SRO shall seek to be collaborative with all AISD personnel.  However, the SROs will be employees of the Police Department and shall be solely subject to the administration, supervision and control of the Police Department."  *See id.* ¶ 3(A).  Furthermore,

2

"[a]n SRO is first and foremost a law enforcement officer and shall be subject to all personnel policies and practices of the Police Department except as such policies or practices may be modified by the terms and conditions of this Agreement." *See id.* ¶ 3(B). The Agreement also addresses the duty hours of SROs and reflects an intent that "the SRO's duty hours shall conform to the school day." *Id.* ¶ 4(A). The parties to the Agreement "understood and agreed that in order to maintain required training needs, an SRO will be required to attend mandatory training during the school year [and] days spent in mandatory training shall be considered as hours worked under this Agreement." *Id.* ¶ 4(C). In pertinent part, the Agreement also states that the SRO's

> duties will include, but not be limited to, the following:
>
> A. To be a visible, active law enforcement figure on campus dealing with law enforcement matters originating on the assigned campus.
>
> B. To act on presumed call and consent of the campus administrator of the assigned campus at all times, in order to provide a safe environment as to matters of law enforcement. This includes general access to buildings, grounds, parking lots, lockers and other school property without necessity of specific call or consent.
>
> . . .
>
> G. The SRO should not be involved in ordinary school discipline, unless it pertains to preventing a potential disruption and/or climate that places students at risk of harm. Disciplining students is a School District responsibility, and only when the principal and the SRO agrees [sic] that the SRO's assistance is needed to maintain a safe and proper school environment would the principal request SRO involvement.
>
> H. If the principal believes that in a given situation or incident there is a violation of a criminal nature, the principal may request SRO involvement.

3

> I. All local law enforcement and state agencies requesting to conduct formal police interviews, interrogations, and arrests of any students should be referred to the campus SRO, or in their absence to a school administrator.
>
> . . .
>
> J. The SRO should coordinate their activities with the principal and staff members concerned and will seek permission, guidance, and thereafter advise staff prior to enacting any programs within the school.
>
> K. The SRO will perform any other duties as assigned by the Chief of Police.

*Id.* ¶ 5. The Agreement also allows SROs to transport students in police vehicles in some circumstances, including "[w]hen the students are victims of a crime, under arrest, or some other emergency exists." *Id.* ¶ 6(A).

In accordance with that agreement, AISD and APD intended and required "SROs to engage in law enforcement actions involving children, including use of restraints and use of force when necessary, in order to 'provide a safe environment' and 'prevent[] a potential disruption and/or climate that places students at risk of harm.'" Pls.' First Am. Compl. ¶ 125 (quoting Ex. B ¶¶ 5(B), 5(G)). In addition, under "the SRO Agreement, AISD and APD authorized Officer Bond and other SROs to become involved in minor school discipline incidents that did not involve criminal matters and where there was no threat of imminent physical harm or of serious property destruction." *Id.* ¶ 170. Personnel would "frequently call[] Officer Bond to get involved in minor incidents of childish misbehaviors—such as talking back to a teacher, not going to one's desk quickly enough, or not tucking in one's shirt—even though disciplining students is a school district responsibility." *Id.*

The SRO Agreement provides no "adequate guidance or restrictions regarding use of force

and/or restraints by SROs against schoolchildren" and no "guidance on appropriate use of handcuffing, arrest, or detention; on appropriate uses of force for children in school settings, including children with disabilities; or on methods of de-escalation prior to using force on children." *Id.* ¶ 126. Although the Agreement contemplates "SRO use to 'preventing a potential disruption and/or climate that places students at risk of harm' AISD and APD provide no further guidance to school administrators or SROs on the interpretation of that very broad statement." *Id.* (quoting Ex. B ¶¶ 5(B), 5(G)). Accordingly, "school district officials and SROs believe that SROs can be involved in situations where there is no risk of criminal matters or imminent danger" and SROs believe "that they can use force as they would on adults, in those situations." *Id.*

APD and AISD adopted "a written policy authorizing SROs to use force and restraint against schoolchildren in minor, non-criminal incidents where the schoolchildren pose no threat of imminent physical harm to others or destruction of property." *Id.* ¶ 5. Similarly, "AISD and APD have a policy based in custom, in which they deploy SROs to incidents that do not involve criminal matters and where there is no threat of imminent physical harm or of serious property destruction;" thus "directly caus[ing] Officer Bond to become involved in the incidents involving T.P., E.G., N.M., and M.D." *Id.* ¶ 141. According to the school principal, AISD personnel "had a regular practice of calling on SROs to assist with students who misbehaved or were disruptive, even if there was no suspicion of criminal behavior or any risk of immediate danger to anyone" and "they regularly called on SROs to remove disruptive or uncooperative students at the Jefferson Center to the Refocus Room, an empty classroom where children can 'cry and scream' until they calm down." Id. ¶ 60. AISD personnel consistently call SROs (1) "to help in incidents that do not involve criminal matters" or any "threat of imminent physical harm or serious property destruction" and (2) "to handle minor

school discipline issues." *Id.* ¶ 142. The personnel "considered the practice to be commonplace and ordinary." *Id.*

Pursuant to 42 U.S.C. § 1983, Plaintiffs bring suit against all defendants for excessive force (Counts 1, 4, 7, and 12) and false arrest/unreasonable seizure (Counts 8 and 13). *Id.* ¶¶ 178-82, 193-97, 208-17, 234-43. In Counts 17 and 18, they also assert conspiracy claims against the City and AISD under § 1983. *See id.* ¶¶ 260-67. Against Officer Bond individually, Plaintiffs further assert state claims of assault (Counts 2, 5, 10, and 15); intentional infliction of emotional distress ("IIED") (Counts 3, 6, 11, and 16); and false arrest/imprisonment (Counts 9 and 14). *Id.* ¶¶ 183-92, 198-207, 218-33, 244-59.

Officer Bond has moved to dismiss the claims asserted against him. *See* Mot. at 1. After the filing of Plaintiffs' response (doc. 13) and Officer Bond's reply brief (doc. 18) the motion became ripe for ruling.

## II.  MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Officer Bond initially seeks dismissal of the entire action against him. *See* Mot. at 1. His supporting brief likewise appears to seek dismissal of the entire suit. *See* Am. Br. Supp. (doc. 12) at 1. It is clear from the briefing, however, that Officer Bond only argues for the dismissal of state claims under the election of remedies provision of the Texas Tort Claims Act ("TTCA"), Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) (West 2003). *See id.* at 1-11. That provision has no relevancy to the § 1983 claims asserted against Officer Bond. Moreover, both the initial and reply briefs only ask the Court to dismiss Counts 2, 3, 5, 6, 9, 10, 11, 14, 15, and 16 asserted against him. *See id.* at 11; Reply (doc. 18) at 3.

Given the clear limitations of the arguments for dismissal and the unmistakable relief re-

6

quested in the reply brief, the Court should find the motion moot to the extent Officer Bond initially sought dismissal of the § 1983 claims asserted against him. In addition, it should apply the well-established standards of Fed. R. Civ. P. 12(b)(6) and grant the motion to the extent Officer Bond seeks to dismiss the state claims asserted against him.

## A. Legal Standard

Rule 12(b)(6) provides a means to dismiss asserted claims for "failure to state a claim for which relief can be granted." Every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

When ruling on a Rule 12(b)(6) motion, courts generally examine only the contents of the pleadings and any attachments thereto. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). However, they "may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims." *Id.* Furthermore, the courts accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). In addition, they "draw all reasonable inferences in the plaintiff's favor." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). A plaintiff, however, must provide "more than labels and con-

7

clusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated succinctly, to survive dismissal under Rule 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). The alleged facts must "nudge" an asserted claim "across the line from conceivable to plausible" to avoid dismissal under Rule 12(b)(6). *Twombly*, 550 U.S. at 570. Courts do not focus on whether the non-movant will ultimately prevail; they instead focus on whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8.

An affirmative defense may provide a basis to dismiss a claim or complaint under Fed. R. Civ. P. 12(b)(6). *See Davis v. Dallas Cnty.*, 541 F. Supp. 2d 844, 856 (N.D. Tex. 2008) (addressing statute of limitations defense). Federal and state courts in Texas have found that Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) provides a proper basis for dismissal under Rule 12(b)(6). *See Tipps v. McCraw*, 945 F. Supp. 2d 761, 768 (W.D. Tex. 2013) (citing *Illoh v. Carroll*, No. 14-09-01001-CV, 2012 WL 1570991, at *1 (Tex. App. – Houston [14th Dist.] May 3, 2012); *Lieberman v. Romero*, No. 05-08-01636-CV, 2011 WL 1879241, at *2 (Tex. App. – Dallas May 18, 2011)); *Estate of Huff v. Abilene Police Dep't*, No. 1:15-CV-001-P-BL, 2015 WL 5674886, at *5 (N.D. Tex. Sept.

8

24, 2015) (recommendation of Mag. J.), *accepted by* 2015 WL 6751118 (N.D. Tex. Nov. 5, 2015). "Although defendants bear the burden of pleading and proving affirmative defenses, where facts alleged in plaintiff's pleadings make clear that a claim is barred, dismissal under Rule 12(b)(6) may be granted." *In re Dynegy, Inc. Secs. Litig.*, 339 F. Supp. 2d 804, 819 (S.D. Tex. 2004).

**B. Section 101.106(f)**

Officer Bond brings his motion under § 101.106(f) of the TTCA. "In 2003, as part of a comprehensive effort to reform the tort system," Texas amended § 101.106 and re-titled it as "Election of Remedies." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 656 (Tex. 2008). Section 101.106(f) now provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.  On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

The intent behind § 101.106(f) is to "force a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable." *Tex. Adjutant Gen. Office v. Ngakoue*, 408 S.W.3d 350, 354-55 (Tex. 2013) (quoting *Garcia*, 253 S.W.3d at 657).

Despite the changed title, "§ 101.106(f) does not provide an 'election of remedies' to a plaintiff as much as provide government employees immunity from suit in certain instances." *Tipps*, 945 F. Supp. 2d at 766 (citing *Univ. of Tex. Health Sci. Ctr. v. Bailey*, 332 S.W.3d 395, 401 (Tex. 2011)). Under § 101.106(f), employee defendants are entitled to dismissal when the claims asserted against them (1) are "based on conduct within the scope of the defendant's employment with a governmental

9

unit and (2) could have been brought against the governmental unit under the Tort Claims Act." *Id.* The TTCA "strongly favors dismissal of governmental employees." *Id.*

### 1. Scope of Employment

Section 101.106(f) covers alleged conduct of an individual defendant who was (1) employed by a governmental unit and (2) acting within the scope of that employment. No one disputes that Officer Bond was employed by a governmental unit at all relevant times. That prong is thus satisfied for purposes of ruling on the instant motion to dismiss. However, Plaintiffs adamantly dispute that Officer Bond was acting within the scope of his employment when he committed the acts alleged in this case.

The TTCA defines "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in and about the performance of a task lawfully assigned to an employee by competent authority." Tex. Civ. Prac. & Rem. Code § 101.001(5). Additionally, the Restatement of Agency "is a useful beginning point for a discussion of general agency principles." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 755 (1998); *accord Franka v. Velasquez*, 332 S.W.3d 367, 381 n.63 (Tex. 2011) (finding this Restatement relevant to the scope-of-employment issue). The Restatement (Third) of Agency provides:

> An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.

Restatement (Third) Of Agency § 7.07 (2006).

> The Restatement of Agency provides that even intentional torts are within the scope of an agent's employment if the conduct is the kind the employee is employed to perform, occurs substantially within the authorized time and space limits, and is

10

> actuated, at least in part, by a purpose to serve the employer. According to the Restatement, so long as these rules are satisfied, an employee may be said to act within the scope of employment even if the employee engages in acts specifically forbidden by the employer and uses forbidden means of accomplishing results.

*Kolstad v. American Dental Ass'n*, 527 U.S. 526, 543-44 (1999) (citations and internal quotation marks and alterations omitted).

Plaintiffs seek to limit the general scope of Officer Bond's duties to their interpretation of the duties set forth in the SRO Agreement. That Agreement, however, provides a broad list of non-exclusive duties of SROs. At the outset, the list indicates that the duties "will include, but not be limited to" the listed duties. The list concludes with additional far-reaching language: "The SRO will perform any other duties as assigned by the Chief of Police." The duties set out in the SRO Agreement are much broader than Plaintiffs' interpretation.

More importantly, the Court cannot simply look to a list of duties to be performed when factual allegations reveal duties as they are performed in the actual work environment. Regardless of what the SRO Agreement may or may not list as duties of SROs in the AISD, it is clear from the factual allegations in Plaintiffs' amended complaint that SRO duties as actually performed at the AISD include (1) law enforcement actions involving children; (2) use of restraint and force when necessary; and (3) handling minor incidents of student misbehavior, disruptions, and non-criminal school infractions that do not relate to a threat of imminent physical harm or serious property destruction. From those factual allegations, it is clear that, as a school resource officer, Officer Bond was generally acting within the scope of his duties at all times relevant to this action. That he may have acted in an improper manner does not remove his conduct from the general scope of duties of school resource officers.

11

For these reasons the Court should find the Officer Bond was acting within the general scope of his employment within the meaning of § 101.106(f).

**2. Could Have Been Brought Against Governmental Entity**

Even when the employee has acted within the general scope of his employment, dismissal under Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) is warranted only when the plaintiffs could have brought the TTCA claims against the governmental entity. *Franka v. Velasquez*, 332 S.W.3d 367, 375 (Tex. 2011). Since the *Franka* decision, Texas law clearly provides that, for purposes of § 101.106(f), a claim could have been brought under the TTCA against the governmental entity whether or not the TTCA waives immunity from suit. *Id.* at 385. "Under the *Franka* rule, all tort claims, including intentional torts, 'could have been brought' against the governmental unit, regardless of whether the governmental unit's immunity from suit is expressly waived by the TTCA for those claims." *Bordges v. City of Flower Mound*, No. 4:11-CV-310, 2011 WL 5600339, at *5 (E.D. Tex. Oct. 14, 2011) (recommendation of Mag. J.), *adopted by* 2011 WL 5599925 (E.D. Tex. Nov. 16, 2011); *accord Gil Ramirez Group, L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 415 (5th Cir. 2015) (recognizing that "the TTCA also covers all tort theories that may be alleged against a governmental entity whether or not it waives that immunity").

In this case, Plaintiffs assert state claims of assault, IIED; and false arrest/imprisonment. Under Texas law, these claims and other intentional torts may be brought against the entity under the TTCA. *Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014) (finding claims of assault, conspiracy, slander, false arrest, false imprisonment, and malicious prosecution could have been brought under the TTCA); *see also Estate of Huff v. Abilene Police Dep't*, No. 1:15-CV-001-P-BL, 2015 WL 5674886, at *5 (N.D. Tex. Sept. 24, 2015) (recommendation of Mag. J.) (IIED), *accepted by* 2015

WL 6751118 (N.D. Tex. Nov. 5, 2015); *Jackson v. Tex. S. Univ.*, 997 F. Supp. 2d 613, 649 (S.D. Tex. 2014) (assault); *Herrera v. Aguilar*, No. SA-10-CV-00569-DAE, 2013 WL 4784125, at *4 (W.D. Tex. Sept. 6, 2013) (assault); *Bordges*, 2011 WL 5600339, at *5 (false imprisonment). Consequently, the Court should find that the state claims asserted against Officer Bond could have been brought against the governmental unit.

### 3. <u>Summary</u>

The facts alleged in Plaintiffs' pleadings make clear that their state claims are barred under Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). When that section bars the state claims, the statute requires dismissal unless the plaintiffs file an amended pleading dismissing the employee and naming the governmental unit as defendant within thirty days of the filing of the motion to dismiss. Plaintiffs have not filed such an amended pleading. Nor have they sought leave to substitute the governmental entity as the defendant on the state claims. At this point, moreover, "it is too late to seek such leave." *Orr v. Copeland*, No. A-14-CV-212-LY, 2015 WL 3901654, at *2 (W.D. Tex. June 23, 2015). Accordingly, the Court should grant the motion to dismiss the state claims under Fed. R. Civ. P. 12(b)(6).

### III. CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Court **FIND MOOT in part and GRANT in part** Barry Bond's Amended 12(b)(6) Motion to Dismiss for Plaintiffs' Failure to State a Claim upon which Relief may be Granted (doc. 11). The motion should be found moot to the extent it seeks dismissal of claims asserted under 42 U.S.C. § 1983. It should be granted to the extent Officer Bond seeks dismissal of the state claims asserted against him. Accordingly, the Court should **DISMISS** the state claims asserted against Officer Bond in Counts 2, 3, 5, 6, 9, 10, 11,

14, 15, and 16. In light of the recommended partial dismissal, the undersigned directs the Clerk of Court to reassign this case to Senior District Judge Sam R. Cummings in accordance with the Second Amended Special Order No. 3-301. After that reassignment, the undersigned may continue to exercise all powers permitted by 28 U.S.C. § 636(b) unless otherwise directed by Judge Cummings. *See* Second Am. Special Order No. 3-301 at 2.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED this 31st day of August, 2016.**

_____
    **E. SCOTT FROST**
    **UNITED STATES MAGISTRATE JUDGE**