## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## ABILENE DIVISION

| | | |
|---|---|---|
| **E.G., by his Next Friend Vania Gonzalez, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **No. 1:16-CV-0068-BL** |
| | § | |
| **BARRY BOND, et al.,** | § | |
| **Defendants.** | § | |

### REPORT AND RECOMMENDATION

The Court has under consideration Defendant Abilene Independent School District's ("AISD") Motion to Dismiss (doc. 15) (hereinafter "AISD's Mot.") and City of Abilene's ("the City") 12(b)(6) Motion to Dismiss for Plaintiffs' Failure to State a Claim Upon Which Relief May Be Granted (doc. 16) (hereinafter "City's Mot."). Both motions are fully briefed and ready for ruling. This action has been referred pursuant to 28 U.S.C. § 636(b) and the Second Amended Special Order No. 3-301, which became effective on April 26, 2016. Because the parties have not consented to have all further proceedings in this case conducted by a magistrate judge, the undersigned issues this report and recommendation. Given the prior recommendation issued in this action the case has already been reassigned to Senior District Judge Sam R. Cummings in accordance with Second Amended Special Order No. 3-301.

### I. BACKGROUND[1]

Four minor[2] students (TP, EG, NM, and MD) of AISD have brought this suit against a School

---

[1]The factual background is either uncontested or viewed in a light most favorable to Plaintiffs in accordance with the applicable standard for considering motions to dismiss.

[2]At the time of the events, TP was sixteen, MD was fifteen, NM was twelve, and EG was six. Pls.' First Am. Compl. ¶ 3.

Resource Officer ("SRO"), Barry Bond, for four separate incidents in which he allegedly used unreasonable physical force and restraint against them.  Pls.' First Am. Compl. (doc. 10) ¶ 1.  Incidents occurred in March 2014, May 2014, March 2015, and either February or March 2015.  *Id.* ¶ 3.  Plaintiffs further allege that the City and AISD are municipally liable for the Officer's actions.[3] *Id.* ¶ 5.

At the time of the incidents giving rise to this litigation, Officer Bond was an employee of the City of Abilene Police Department ("APD") and, as alleged by Plaintiffs, he assaulted them "[w]hile acting in his capacity as a SRO."  *Id.* ¶ 2.  The APD "employed Officer Bond as a peace officer" and in accordance with "a written agreement with AISD implementing its SRO program, APD and AISD stationed Officer Bond at the school."  *Id.* ¶ 4.  Pursuant to that written agreement, "AISD used Officer Bond as a SRO in the Jefferson Center, a reassignment and alternative school in AISD where the incidents occurred" and according to Plaintiffs, "Officer Bond was acting under color of state law as an agent of the City of Abilene and AISD" at all relevant times.  *Id.* ¶ 13.

"The main purpose of the SRO program is to strive to provide a secure campus for the students, faculty and staff of the Abilene Independent School District."  *See* School Resource Officer Agreement ("the Agreement" or "the SRO Agreement"), attached to Pls.' First Am. Compl. as Ex. B, ¶ 5.  In accordance with the SRO Agreement, AISD and APD intended and required "SROs to engage in law enforcement actions involving children, including use of restraints and use of force when necessary, in order to 'provide a safe environment' and 'prevent[] a potential disruption and/or climate that places students at risk of harm.'"  Pls.' First Am. Compl. ¶ 125 (quoting Ex. B ¶¶ 5(B),

---

[3]Because the police department is a non-jural entity without a separate legal existence, claims arising from conduct of the police department are properly brought against the City.  *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991).

5(G)).  In addition, under "the SRO Agreement, AISD and APD authorized Officer Bond and other SROs to become involved in minor school discipline incidents that did not involve criminal matters and where there was no threat of imminent physical harm or of serious property destruction." *Id.* ¶ 170.  Personnel would "frequently call[] Officer Bond to get involved in minor incidents of childish misbehaviors—such as talking back to a teacher, not going to one's desk quickly enough, or not tucking in one's shirt—even though disciplining students is a school district responsibility." *Id.*

The SRO Agreement provides no "adequate guidance or restrictions regarding use of force and/or restraints by SROs against schoolchildren" and no "guidance on appropriate use of handcuffing, arrest, or detention; on appropriate uses of force for children in school settings, including children with disabilities; or on methods of de-escalation prior to using force on children." *Id.* ¶ 126. Although the Agreement contemplates "SRO use to 'preventing a potential disruption and/or climate that places students at risk of harm' AISD and APD provide no further guidance to school administrators or SROs on the interpretation of that very broad statement." *Id.* (quoting Ex. B  ¶¶ 5(B), 5(G)).  Accordingly, "school district officials and SROs believe that SROs can be involved in situations where there is no risk of criminal matters or imminent danger" and SROs believe "that they can use force as they would on adults, in those situations." *Id.*

APD and AISD adopted "a written policy authorizing SROs to use force and restraint against schoolchildren in minor, non-criminal incidents where the schoolchildren pose no threat of imminent physical harm to others or destruction of property." *Id.* ¶ 5.  Plaintiffs contend that, by adopting and implementing the SRO Agreement, the City and AISD are municipally liable for the acts committed by Officer Bond. *Id.* ¶ 124.

Similarly, "AISD and APD have a policy based in custom, in which they deploy SROs to

3

incidents that do not involve criminal matters and where there is no threat of imminent physical harm or of serious property destruction;" thus "directly caus[ing] Officer Bond to become involved in the incidents involving T.P., E.G., N.M., and M.D." *Id.* ¶ 141. According to the school principal, AISD personnel "had a regular practice of calling on SROs to assist with students who misbehaved or were disruptive, even if there was no suspicion of criminal behavior or any risk of immediate danger to anyone" and "they regularly called on SROs to remove disruptive or uncooperative students at the Jefferson Center to the Refocus Room, an empty classroom where children can 'cry and scream' until they calm down." *Id.* ¶ 60. AISD "personnel have a consistent and widespread practice and custom of calling SROs to help in incidents that do not involve criminal matters" or any "threat of imminent physical harm or serious property destruction." *Id.* ¶ 142. Such personnel also "routinely call on SROs to handle minor school discipline issues" and they "considered the practice to be commonplace and ordinary." *Id.* SROs made false arrests and used excessive force as a direct result of their "routine and frequent involvement in minor school discipline incidents, without adequate guidance or training." *Id.* ¶ 145.

Pursuant to 42 U.S.C. § 1983, Plaintiffs bring suit against the City and AISD for excessive force (Counts 1, 4, 7, and 12) and false arrest/unreasonable seizure (Counts 8 and 13) in violation of the Fourth Amendment. *Id.* ¶¶ 178-82, 193-97, 208-17, 234-43. In Counts 17 and 18, they assert conspiracy claims against the two entities. *See id.* ¶¶ 260-67. To support their claims, they set out facts related to (1) the City's failure to train, supervise, and discipline Officer Bond;[4] (2) identification of municipal policymakers; and (3) the alleged conspiracy. *See id.* ¶¶ 146-77.

Under Fed. R. Civ. P. 12(b)(6), the City and AISD seek dismissal of the claims asserted

---

[4]For ease of reference, this recommendation will often collectively refer to these three failures as "failures to act."

against them.  *See*, *generally*, AISD's Mot.; City's Mot.  AISD contends that excessive force claims against it are barred and Plaintiffs have made insufficient allegations for their claims of municipal liability and conspiracy.  *See*, *generally*, AISD Br. (doc. 15-1).  The City argues that Plaintiffs have asserted insufficient facts to support their claims, including their claim of municipal liability.  *See*, *generally*, City's Br. (doc. 17).  Plaintiffs have responded to each motion.  *See* Pls.' Resp. AISD's Mot. (doc. 25); Pls.' Resp. City's Mot.  (doc. 26).  Both entities have filed a reply brief.  *See* AISD's Reply (doc. 29); City's Reply (doc. 30).  The motions are thus ripe for ruling.

## II.  MOTION TO DISMISS

Rule 12(b)(6) provides a means to dismiss asserted claims for "failure to state a claim for which relief can be granted."  Every pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This requirement provides opposing parties "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

When ruling on a Rule 12(b)(6) motion, courts generally examine only the contents of the pleadings and any attachments thereto.  *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).  However, they "may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims."  *Id.*  Furthermore, the courts accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  In addition, they "draw all reasonable inferences in the plaintiff's favor."  *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (citation omitted). A plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Stated succinctly, to survive dismissal under Rule 12(b)(6), the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). The alleged facts must "nudge" an asserted claim "across the line from conceivable to plausible" to avoid dismissal under Rule 12(b)(6). *Twombly*, 550 U.S. at 570. Courts do not focus on whether the non-movant will ultimately prevail; they instead focus on whether that party should be permitted to present evidence to support adequately asserted claims. *Id.* at 563 n.8.

## A. Section 1983

In Counts 1, 4, 7, 8, 12, and 13, Plaintiffs seek relief under 42 U.S.C. § 1983 for alleged excessive force and unlawful restraint under the Fourth Amendment. Pls.' First Am. Compl. ¶¶ 178-82, 193-97, 208-17, 234-43. In Counts 17 and 18, they assert conspiracy claims against the City and AISD under § 1983. *See id.* ¶¶ 260-67.

6

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted).  To survive a motion to dismiss a § 1983 claim for alleged deprivation of constitutional rights, the plaintiff must allege that (1) a state actor, i.e., a person or entity acting under color of state law, (2) deprived the plaintiff of a federal constitutional right.  *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 867-69 (5th Cir. 2012) (en banc).

A plaintiff, moreover, may hold a municipality or local government entity – such as a city or school district – liable under § 1983 "only for acts for which it is actually responsible." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (1998); *accord Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986).  Municipal liability does not attach merely on a theory of respondeat superior or because an employee committed a tort.  *Pembaur*, 475 U.S. at 479.  Requiring a plaintiff to identify a policy or custom that caused his or her injury "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997).

### 1. **Excessive Force**

AISD argues that Plaintiffs' excessive force claims are subject to a substantive due process analysis and are thus barred because Texas provides an adequate remedy to address claims of excessive discipline.  AISD's Br. at 9-10.  Plaintiffs contend that corporal punishment, i.e., excessive discipline, is not at issue in this case because they assert no such claim in their amended complaint and an SRO cannot engage in corporal punishment.  Pls.' Resp. AISD's Mot. at 5-6.

Plaintiffs indeed assert excessive force claims under the Fourth Amendment rather than substantive due process violations under the Fourteenth Amendment. *See* Pls.' Fist Am. Compl. ¶¶ 178-82, 193-97, 208-17, 234-43 (Counts 1, 4, 7, and 12). In addition, they point out that, last year, the Fifth Circuit reviewed a claim of excessive force by a school resource officer under the objective reasonableness test of the Fourth Amendment. *See Curran v. Aleshire*, 800 F.3d 656, 661 (5th Cir. 2015). In reply, AISD does not address *Curran*. *See* AISD's Reply at 1-3. It instead continues to maintain that due process claims stemming from corporal punishment are barred to the extent Plaintiffs raise any substantive due process claims. *Id.*

The Court should not countenance the attempt to transform Plaintiffs' Fourth Amendment excessive force claims into Fourteenth Amendment substantive due process claims based on excessive discipline or corporal punishment. The amended complaint supports the Plaintiffs' contention that they do not assert any substantive due process claim. As Plaintiffs point out the Fifth Circuit has recently addressed a similar claim under Fourth Amendment standards. Even in *Campbell v. McAlister*, 162 F.3d 94, 1998 WL 770706 (5th Cir. 1998) (per curiam), a case relied upon by AISD, the Fifth Circuit declined to limit its analysis to the Fourteenth Amendment. *See* 1998 WL 770706, at *3-5. Plaintiffs have asserted a Fourth Amendment claim. Whether it survives summary dismissal at this juncture should be determined within the well-established context of municipal liability.

### 2. <u>Municipal Liability</u>

To hold a municipality liable under 42 U.S.C. § 1983 "requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 866 (5th Cir. 2012) (en banc). "Parties can sue a municipality that has violated their constitutional rights 'under

8

color of any statute, ordinance, regulation, custom, or usage.'" *Advanced Tech. Bldg. Solutions, L.L.C. v. City of Jackson*, 817 F.3d 163, 165 (5th Cir. 2016) (quoting 42 U.S.C. § 1983 and citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).  While official policy is normally "contained in duly promulgated policy statements, ordinances or regulations," it may also be evidenced by "a persistent, widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (citation omitted).

Regardless of the required proof needed to ultimately prevail on a given claim, when ruling on a Rule 12(b)(6) motion, courts examine the factual allegations of the operative pleading to determine whether asserted claims survive the motion.  *Groden v. City of Dallas*, 826 F.3d 280, 282-83 (5th Cir. 2016).  To survive a motion to dismiss, claims within the operative pleading must contain sufficient factual allegations to comply with Fed. R. Civ. P. 8(a)(2) as interpreted in *Iqbal* and *Twombly*.

In the years following *Twombly* and *Iqbal*, "courts have split as to the level of specificity required for pleading municipal liability claims." *Mitchell v. City of New Orleans*, No. CV 06-4021, 2016 WL 1733627, at *7 (E.D. La. May 2, 2016).  In 2011, the Southern District of Texas described the different approaches and formulated an approach to reconcile the *Iqbal-Twombly* standard with the Supreme Court's prior rejection of a heightened pleading standard for § 1983 claims against municipalities set out in *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).  *See Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 841-45 (S.D. Tex. 2011).  Recognizing that (1) *Iqbal* instructs courts to draw on judicial experience and common sense

when conducting the context-specific task of determining whether a complaint states a plausible claim for relief and (2) in the municipal liability context, "it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery," the court concluded that "only minimal factual allegations should be required at the motion to dismiss stage." *Id.* at 842-43.  It set an appropriate balance of "requiring more than boilerplate allegations but not demanding specific facts that prove the existence of a policy." *Id.* at 844.

Other courts, including the Northern District of Texas, have followed this common-sense approach to the factual specificity required for municipal liability claims.  *See*, *e.g.*, *Schaefer v. Whitted*, 121 F. Supp. 3d 701, 718 (W.D. Tex. 2015); *Gooding v. Ketcher*, 838 F. Supp. 2d 1231, 1241 (N.D. Okla. 2012); *Mitchell*, 2016 WL 1733627, at *7; *Pena v. Dallas Cnty. Hosp. Dist.*, No. 3:12-CV-439-N, 2013 WL 11299229, at *10 n.16 (N.D. Tex. June 26, 2013); *Taylor v. RED Dev., LLC*, No. 11-2178-JWL, 2011 WL 3880881, at *3 (D. Kan. Aug. 31, 2011).  In addition, prior to *Thomas*, one court noted that *Twombly* and *Iqbal* "clarified that the pleading requirement for facts rather than conclusions lies within Fed. R. Civ. P. 8(a), not any heightened pleading standard." *Wright v. City of Dallas*, No. 3:09-CV-1923-B, 2010 WL 3290995, at *3 (N.D. Tex. July 19, 2010) (recommendation of Mag. J.), *accepted by* 2010 WL 3291816 (N.D. Tex. Aug. 19, 2010).  The court further noted that "[t]he difference between the Rule 8(a) pleading standard and an impermissible heightened pleading standard is in the factual particularity or specificity needed to state a claim." *Id.* (citing *Twombly*, 550 U.S. at 569 n.14).

The Court should apply the persuasive rationale set out in *Thomas* and the cases following it to avoid the arguable conflict between *Iqbal-Twombly* and *Leatherman*.  While the context of a

given case does not permit use of a heightened pleading standard to require a plaintiff to "allege 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief," *Twombly*, 550 U.S. at 570 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002)), the context of municipal liability claims in general justify acceptance of minimal factual allegations when a court draws on its judicial experience and common sense to determine whether such a claim survives a motion to dismiss.  Thus, as set out in *Thomas*, when

> a plaintiff provides more than a boilerplate recitation of the grounds for municipal liability, and instead makes some additional allegation to put the municipality on fair notice of the grounds for which it is being sued, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later."

800 F. Supp. 2d at 844-45 (quoting *Leatherman*, 507 U.S. at 168–69).  At the motion to dismiss stage, minimal factual allegations are sufficient when asserting a municipal liability claim and the "allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general."  *Harvey v. Montgomery Cnty.*, 881 F. Supp. 2d 785, 797 (S.D. Tex. 2012) (quoting *Thomas*, 800 F. Supp. 2d at 843).

### a.  Relevant Municipality

AISD argues that Plaintiffs cannot hold it liable for incidents by an employee of the police department.  AISD Br. at 13-14.  Relying on various portions of the SRO Agreement, it contends that the police department was solely responsible for supervising and controlling Officer Bond.  *Id.* at 14.  The Agreement, however, also provides that a principal may request a change in SRO when dissatisfied.  *See* SRO Agreement ¶ 3(D).  Furthermore, Texas law provides that the school district, through the board of trustees, determines whether to employ security personnel and their duties and activities.  *See* Tex. Educ. Code Ann. § 37.081(a), (d), and (e) (West Supp. 2014).  At this point in

11

the litigation, sufficient factual allegations exist to reject AISD's argument that municipal liability is precluded against it due to the employment status of Officer Bond.

### b. Constitutional Violation

Other than AISD's challenge to the excessive force claims already addressed, neither entity seriously contests Plaintiffs' factual allegations that Officer Bond violated their constitutional rights. In Paragraphs 5 and 6 of its brief, the City may suggest that Plaintiffs allege inadequate facts to support their claimed constitutional violations, but the City's challenge appears to be focused on the allegations regarding an official policy, widespread practice, and custom rather than the underlying constitutional violations. *See* City's Br. at 2. In any event, for purposes of resolving the motions to dismiss, the Court should find sufficient factual allegations of excessive force and false arrest or unlawful restraint in violation of the Fourth Amendment.

### c. Policymaker

Plaintiffs identify policymakers of the APD (Chief Standridge and Lt. Tauer) and AISD (Superintendent Burns and Associate Superintendent Ude). Pls.' First Am. Compl. ¶¶ 157, 162-67. AISD argues that alleged acts of staff members cannot serve as a basis for municipal liability. *See* AISD Br. at 14. Plaintiffs respond that they have pled facts to support their allegations that the superintendents are final policymakers based on Texas Education Code §§ 11.1511-12. *See* Pls.' Resp. AISD Mot. at 17 (citing Pls.' First Am. Compl. ¶¶ 164-67). They also assert that the Fifth Circuit has held that school boards may delegate final policymaking authority to a superintendent. *See id.* (citing *Reeves v. Claiborne Cnty. Bd. of Educ.*, 828 F.2d 1096, 1102 (5th Cir. 1987)). Plaintiffs have pled sufficient facts regarding a final policymaker of AISD and there is at least a plausible basis that the school board delegated final policymaking authority to one of the superintendents.

12

Additionally, the Fifth Circuit has recently held that plaintiffs do not need to plead "the specific identity of the policymaker" to survive a motion to dismiss. *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016).

The City attacks Plaintiffs' municipal liability claims on grounds that they identify more than one official policymaker. *See* City Br. at 4-5. In making such attack, the City appears to misconstrue or misapply *Groden*. In *Groden* the Fifth Circuit held that the "plaintiff is not required to single out the specific policymaker in his complaint." 826 F.3d at 282. Although the City recognizes that holding, it argues that Plaintiffs violate pleading requirements by identifying more than one official policymaker and that such violation makes their municipal liability claim subject to dismissal under Fed. R. Civ. P. 12(b)(6). *See* City Br. at 4-5.

However, the *Groden* decision emphasizes that alleged facts determine whether a claim survives summary dismissal under Rule 12(b)(6). *See* 826 F.3d at 282-83. Succinctly stated in the context of municipal liability, "a plaintiff need only plead *facts* that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker." *Id.* at 282. Given the appropriate emphasis on alleged facts, the Court should reject the argument that identifying multiple policymakers necessarily violates pleading requirements and renders the municipal liability claim subject to dismissal. *Groden* simply does not support that argument. In addition, pleading multiple individuals as a policymaker does not make Plaintiffs' alleged facts conclusory or speculative.

For the foregoing reasons, the Court should find the factual allegations regarding the policy-maker element sufficient to withstand the motions to dismiss.

13

### d. **Official Policy**

Plaintiffs identify an official written policy, i.e., the SRO Agreement, that they allege resulted in the violation of their constitutional rights. Pls.' First Am. Compl. ¶¶ 112, 124-40. As an initial matter, courts must determine whether an identified policy "is facially constitutional or unconstitutional." *Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001). An " unconstitutional official policy renders a municipality culpable under § 1983," without any need to consider deliberate indifference. *Id.* at 579 & n.22. When the policy itself compels a constitutional violation, the "potential for municipal liability . . . is well established, because a constitutional violation flows directly from a policymaker's deliberate choice reflected in an official policy or action." *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389 (8th Cir. 2007) (citing various Supreme Court cases). "Where a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

Plaintiffs contend that the SRO Agreement is facially deficient and authorizes or condones unconstitutional behavior by SROs. Pls.' Resp. City's Mot. at 6. Despite the contention, they do not appear to maintain that the Agreement is facially unconstitutional. They instead allege that the document provides inadequate guidance or restrictions regarding use of force or restraints against students. Pls.' First Am. Compl. ¶ 126. They further allege that "APD and AISD acted with deliberate indifference by adopting a written policy authorizing SROs to use force and restraint against schoolchildren in minor, non-criminal incidents where the schoolchildren pose no threat of imminent physical harm to others or destruction of property." *Id.* ¶ 5. Additionally, a review of the Agreement on the current allegations reveals no facial unconstitutionality. The Agreement does not itself com-

14

pel any constitutional violation.  The Court should consider the alleged official written policy as facially constitutional.

Municipal liability does not arise merely from a facially constitutional written policy that "fails to give detailed guidance that might have averted a constitutional violation by an employee." *Szabla*, 486 F.3d at 392.  When "a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Brown*, 520 U.S. at 405.  A "facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).  The test for deliberate indifference is stringent and requires more than a showing of "even heightened negligence." *Id.*

Plaintiffs have alleged that the police department and school district acted with deliberate indifference when they adopted the written policy.  Pls.' First Am. Compl. ¶ 5.  They later allege:

131.    APD and AISD made a conscious decision in failing to provide guidance or restrictions on use of force and arrests by SROs; failing to modify the APD's use of force and arrest policies meant for adults; and failing to require relevant training of SROs.

132.    At all times relevant to this lawsuit, Officer Bond and other SROs, like all APD officers, received training in use of force, restraint, handcuffing, and arrest techniques designed for use on adults. They did not receive training on use of force, restraint, handcuffing, arrest, negotiation, de-escalation, and conflict resolution techniques that are appropriate for use on children, people of small stature, children with disabilities, or in school environments.

133.    Defendants City of Abilene and AISD consciously disregarded the risk of obvious physical and emotional harm to AISD schoolchildren, including Plaintiffs, from the lack of guidance or restrictions, modifications to APD's use of force and

arrest policies, and lack of relevant training.

134.    As a result of the lack of guidance, modifications to APD's use of force and arrest policies and lack of proper training, implementation of the SRO Agreement resulted in the highly probably [sic] consequences of Officer Bond using excessive force on T.P., E.G., N.M., and M.D., and falsely arresting N.M. and M.D.

135.    Officer Bond's actions in subjecting all four Plaintiffs to excessive use of force, and subjecting N.M. and M.D. to false arrest and/or unreasonable seizures, were a highly predictable and foreseeable result of the policy adopted and imple- mented by AISD and APD.  This risk was obvious to policymakers at AISD and APD, who are education and law enforcement officials, because they knew that the policy would result in uses of force and restraint by SROs on schoolchildren, and the policy intended for SROs to use force and restraint on schoolchildren.

*Id.* ¶¶ 131-35.

Although Plaintiffs do not use the phrase "deliberate indifference" within the section of their amended complaint that specifically addresses the promulgation of the SRO Agreement, *see id.* ¶¶ 124-40, magic words are unnecessary to properly plead a claim under Fed. R. Civ. P. 8(a).  Plaintiffs sufficiently allege that the City and AISD acted with deliberate indifference.  Plaintiffs do more than recite boilerplate allegations for municipal liability based upon the SRO Agreement.  Their alleged facts sufficiently put defendants on fair notice of the grounds for which they are being sued for their deliberate indifference relative to that written policy.

The City argues that the complaint is conclusory and speculative with respect to the official written policy because Plaintiffs fail to allege which portions of the SRO Agreement was the moving force behind the violations of their constitutional rights.  City's Br. at 5.  It further argues that the allegation of deliberate indifference when entering into the SRO Agreement is likewise conclusory and speculative.  *Id.*  Plaintiffs, however, have alleged that the SRO Agreement lacks detailed guid- ance that resulted in constitutional violations by Officer Bond.  Their allegations are sufficient for

purposes of overcoming a motion to dismiss.

AISD argues that the SRO Agreement provides no basis for liability against it because Officer Bond was an employee of the police department.  AISD Br. at 14-15.  As discussed earlier, the officer's employment status with the City does not preclude liability against AISD.  That status also does not preclude the SRO Agreement from being an official policy of AISD.  Given the allegations in this case, the Agreement may constitute an official policy of both entities.

For the foregoing reasons, the Court should find that Plaintiffs have provided sufficient factual allegations of an official written policy.

### e.  Official Custom

Alternatively, Plaintiffs identify widespread customs of the City and AISD.  Pls.' First Am. Compl. ¶¶ 141-45.  They specifically allege a customary policy in the deployment of SROs.  *See id.* ¶¶ 141-42. The complaint, furthermore, describes in detail four incidents of misconduct by Officer Bond that violated constitutional rights and resulted from the policy or custom.  *See, e.g., id.* ¶ 1.

"A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010).  To show the existence of a customary policy, plaintiffs may rely on "a pattern of unconstitutional conduct" by non-policymaker "municipal actors or employees." *Id.*  "A pattern requires similarity and specificity; [p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009) (citation and internal quotation marks omitted).  Isolated incidents do not constitute a pattern because there must be "sufficiently numerous prior incidents" to qualify as a pattern. *Id.* (quoting

*McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)).  Furthermore, it is insufficient

to make a conclusory allegation that an unwritten policy, practice, or custom exists.  *Harvey v. Mont-*

*gomery Cnty.*, 881 F. Supp. 2d 785, 797 (S.D. Tex. 2012).  Nevertheless, in a suit against a munici-

pality, a plaintiff

> can provide fair notice to the defendant as needed to survive a motion to dismiss by,
> *inter alia*, describing (1) past incidents of misconduct by the defendant to others; (2)
> multiple harms that occurred to the plaintiff himself; (3) the involvement of multiple
> officials in the misconduct; or (4) the specific topic of the challenged policy or train-
> ing inadequacy.

*Flanagan v. City of Dallas*, 48 F. Supp. 3d 941, 947 (N.D. Tex. 2014) (accepting recommendation

of Mag. J.).

AISD and the City argue that four incidents by a single officer over a period of twelve

months is insufficient to find a customary policy.  AISD Br. at 17-18; City's Br. at 6.  While the

number of alleged incidents is small, courts look beyond mere numbers when considering whether

municipal liability claims survive a motion to dismiss.  Frequency of alleged violations  may be a

relevant factor in a given case.  *See Flanagan*, 48 F. Supp. 3d at 955.  Furthermore, a twelve-month

period in the school context typically includes a multi-month summer break when schools are either

not in session or only in session for a greatly reduced student population.  Plaintiffs suggest that the

time period may be appropriately limited to a 180-day period, which equates to the normal school

year.  Pls.' Resp. City's Mot.  at 10.  Thus, the alleged frequency of incidents in this case could be

as much as four in a 180-day period.  Regardless, it is at least plausible at this stage of the litigation

that a twelve-month period in the school context may equate to a much shorter period in other

contexts.  Another factor would be the size of the municipality – four incidents in the Abilene school

district is markedly different from four incidents in a larger school district such as Dallas or Houston.

18

While eleven incidents over a four-year period in Houston, *see Pineda v. City of Houston*, 124 F. Supp. 2d 1057, 1070 (S.D. Tex. 2000) (recognizing that the eleven incidents of warrantless entries spanned a four-year period), *affirmed in part and modified in part*, *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002) (finding the eleven incidents insufficient to create a fact dispute); or twenty-seven complaints of excessive force over a three-year period in Fort Worth, *see Peterson v. City of Fort Worth*, 588 F.3d 838, 850 (5th Cir. 2009), were insufficient to establish a pattern at the summary judgment stage, the alleged constitutional violations here occurred in a much smaller community and the entity defendants seek dismissal under Fed. R. Civ. P. 12(b)(6), not Rule 56. Other than requiring more than one incident by non-policymakers, neither the Fifth Circuit nor the Supreme Court have set a specific number of incidents that is required for a plausible claim of municipal liability under a custom or practice.

Under the alleged facts of this case, the Court should find sufficient factual allegations to permit the municipal liability claims based on custom or practice to survive the motions to dismiss. While it may be that Officer Bond was merely acting outside of and beyond the policies and customs of the City and AISD, at this stage of the proceedings, the Court is not concerned with whether Plaintiffs will ultimately prevail on their municipal liability claims – the issue is whether Plaintiffs should be able to present evidence on such claims.

### f. Failures to Train, Supervise, and Discipline

Plaintiffs assert that the City is liable for failing to train, discipline, and supervise Officer Bond. Pls.' First Am. Compl. ¶¶ 146-61. They clarify that they do not assert that theory of liability against AISD. Pls.' Resp. AISD Mot. at 6 n.4. They include numerous facts related to alleged failures to act. *See* Pls.' First Am. Compl. ¶¶ 146-61. In addition to those paragraphs and their

19

allegations in ¶¶ 131-34 that were quoted previously, they allege that:

(1)    "APD did not train SROs like Officer Bond on children and adolescent behavior;"

(2)    APD indicated that it would continue with its "regular APD training and protocols to address SRO interactions with children, without modification;" and

(3)    "neither Abilene ISD nor the Abilene Police Department ever disciplined Officer Bond for this use of force against E.G., required him to undergo any additional training, or otherwise re-assigned him to a position away from the Jefferson Center."

*Id.* ¶¶ 57, 61, 64.

The City argues that Plaintiffs have merely made conclusory and speculative allegations regarding any failure to train.  City's Br. at 6-7.  It further argues that Plaintiffs have not pled any policy or custom that would make it liable for alleged deprivation of their constitutional rights due to a failure to supervise or discipline.  City's Reply at 2.

Nearly thirty years ago, the Supreme Court addressed the notion that a municipality would have a policy of inadequate training.  *See City of Canton v. Harris*, 489 U.S. 378, 390 (1989).  The Supreme Court recognized:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees.  But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.  In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.* (footnotes omitted).  A policy of inadequate supervision, like inadequate training, may also make a municipality liable.  *Hinojosa v. Butler*, 547 F.3d 285, 296 (5th Cir. 2008).  "The circuits have

uniformly interpreted *Canton*'s 'deliberate indifference' requirement, announced in the context of a 'failure to train' claim, to apply to all cases involving facially constitutional policies." *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 757 (5th Cir. 1993).  Thus, the Fifth Circuit requires "a showing of deliberate indifference before holding a city liable for a policymaker's mistaken personnel decisions." *Id.* at 758.

Expanding on the failure to train avenue to municipal liability, the Fifth Circuit has stated that "municipal policymakers who fail to supervise and to discipline their police officers, acting with deliberate indifference to the citizens' rights, could create municipal liability if the lack of supervision then caused a deprivation." *Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004).  Consequently, an alleged failure to discipline is essentially another way to allege a failure to supervise.  Notably,

> even though a policymaker's response to a particular incident may not cause the injury, the response might provide evidence of the content of a municipality's policies.  That is, the failure to take disciplinary action in response to [a constitutional violation], when combined with other evidence, could tend to support an inference that there was a preexisting de facto policy of making [such constitutional violations]: the policymaker did not discipline the employee because, in the policymakers' eyes, the employee's illegal conduct actually conformed with municipal policy.

*Id.*

"To prevail on a 'failure to train theory' a plaintiff must demonstrate: (1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010).  The same elements must be shown with respect to alleged failures to supervise or discipline.  *Snow v. City of El Paso*, 501 F. Supp. 2d 826, 833 n.5 (W.D. Tex. 2006) (recognizing that "[a]ll failure to act claims,

such as Plaintiff's failure to train, supervise, and discipline claims, involve the same basic elements: inadequacy, deliberate indifference, and causation").  Of course, in the motion to dismiss context, plaintiffs must make sufficient factual allegations as to these elements.

When addressing a claim of municipal liability, "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton*, 489 U.S. at 390.  Liability does not attach merely because "a particular officer may be unsatisfactorily trained," supervised, or disciplined, or "an otherwise sound program has occasionally been negligently administered."  *Id.* at 390-91.  Nor "will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct."  *Id.* at 391.  Likewise, it does not suffice to show that an injury could have been avoided had the officer been better supervised or disciplined.  Moreover, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."  *Id.*  Similarly, adequately supervised and disciplined officers occasionally make mistakes and those mistakes may say little about the supervision or discipline procedures.  Given these other potential causes for alleged constitutional violations, the law requires that the officer's shortcomings resulted from the faulty training program (or faulty supervision or discipline procedures) to impose municipal liability for an alleged failure to train.  *See id.* at 390-91 (addressing training programs only).

Despite the thorough amended complaint filed in this action, Plaintiffs do not allege that the City was deliberately indifferent in adopting its training, supervising, or discipline procedures or programs.  They do not even identify any policy or procedure regarding those matters.  While Plaintiffs may have intended for their amended complaint to allege an inadequate policy or procedure

related to those matters, the complaint simply lacks such an allegation.  Even in response to the City's motion to dismiss, Plaintiffs do not argue that the failure to act claims are based upon any policy of the City.  *See* Pls.' Resp. City's Mot. at 2, 14-15.  Alleging that a municipality has failed to train, discipline, or supervise an officer differs materially from alleging that the municipality has inadequate policies or procedures regarding those matters.  Without an alleged policy or custom, municipal liability claims necessarily fail.  Because the law does not impose municipal liability in the absence of a policy, this pleading defect provides a sufficient reason to dismiss Plaintiffs claims based on inadequate training, supervision, and discipline.  Although minimal factual allegations are sufficient to assert a municipal liability claim at the motion to dismiss stage, such minimal allegations must include an alleged policy or custom.  While municipal liability does not attach without an alleged official policy, the Court should not interpret a pleading to contain such allegation merely because the plaintiffs assert municipal liability.  An alleged policy is necessary to provide a municipal defendant fair notice that the plaintiffs are not merely asserting a non-viable claim that the municipality failed to train, supervise, or discipline its officers.

For the foregoing reasons, the Court should grant the City's motion on the failure to act claims.  Because Plaintiffs have clarified that they do not assert such claims against AISD, *see* Pls.' Resp. AISD Mot. at 6 n.4, the Court should find AISD's motion moot with respect to such claims.

### 3.  Conspiracy

Plaintiffs allege that the City, acting through APD, conspired with AISD to violate their civil rights by entering into the SRO Agreement.  Pls.' First Am. Compl. ¶¶ 168-69.  They further allege that the conspiracy included their agreement to permit "Officer Bond to administer school discipline pursuant to unconstitutional policies, customs, and practices over the course of one or more years."

*Id.* ¶ 173.  Based on these allegations, they claim that the City and AISD conspired to violate their rights under the Fourth Amendment to be free from objectively unreasonable and excessive use of force and to be free from false arrests and unreasonable seizures.  *Id.* ¶¶ 261-62, 265-66.

To state a civil conspiracy claim, plaintiffs must allege "(1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right."  *Rogers v. Buchanan*, No. 3:12-CV-2458-M-BN, 2015 WL 3439145, at *6 (N.D. Tex. Mar. 27, 2015) (recommendation of Mag. J.) (citing *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999); *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)), *accepted as modified on other grounds*, 2015 WL 3504518 (N.D. Tex. May 28, 2015).  A conspiracy claim requires an agreement "to commit an illegal act."  *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982); *accord Avdeef v. Royal Bank of Scotland, PLC*, No. 4:13-CV-967-O, 2014 WL 4055369, at *3 (N.D. Tex. Aug. 15, 2014), *aff'd*, 616 F. App'x 665 (5th Cir. 2015).

"'Mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy under 42 U.S.C.A. § 1983."  *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986) (quoting *Arsenaux*, 726 F.2d at 1024); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (recognizing need for factual allegations rather than legal conclusions or mere recitation of elements); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (same).  "The complaint must do more than indicate a possibility that a plaintiff could prove his case."  *Avdeef*, 2014 WL 4055369, at *3 (citing *Iqbal*, 556 U.S. at 678).

Plaintiffs' allegations fail to state a claim for civil conspiracy.  While the entity defendants may have agreed to enter into the SRO Agreement and to utilize Officer Bond in the manner alleged, Plaintiffs provide no factual allegations that they made such agreements with the specific intent to

violate anyone's constitutional rights.  The alleged agreements are not agreements to commit any

illegal act.  That constitutional violations occurred is not sufficient to satisfy the requirements for

civil conspiracy.  The alleged facts do not permit the Court to reasonably infer that AISD and the

City are liable for civil conspiracy.  The alleged facts do not nudge the claims from conceivable to

plausible.

For these reasons the Court should find that Plaintiffs' civil conspiracy claims (Counts 17

and 18) fail to state a claim upon which relief can be granted and grant the motions to dismiss these

claims.

### III.  LEAVE TO AMEND

In general, courts should provide pro se litigants an opportunity to amend before dismissing

a complaint.  *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009).  Leave to amend is not re-

quired, however, when plaintiffs have already pled their "best case."  *Id.*  Whether to grant leave to

amend is within the Court's sound discretion.  *U.S. ex rel. Willard v. Humana Health Plan of Tex.*

*Inc.*, 336 F.3d 375, 387 (5th Cir. 2003).  The circumstances of a case may warrant leave to amend

even for represented parties.  *Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (per

curiam).

It is recommended that the Court dismiss Plaintiffs' civil conspiracy claims and their claims

based on alleged failures of the City to train, discipline, and supervise.  With respect to the latter

claims, the dismissal should be with leave to amend, because had Plaintiffs alleged an official policy

or custom that the City failed to have adequate training, discipline, or supervision of SROs assigned

to AISD, such allegations – coupled with the other allegations discussed in this recommendation –

appear sufficient to withstand a motion to dismiss.  For the civil conspiracy claims, however, it

appears that Plaintiffs have pled their best case.  Their responses to the motions provide nothing to indicate that they may be able to make allegations of a civil conspiracy that can withstand a motion to dismiss.  Consequently, unless Plaintiffs make a sufficient showing of a viable civil conspiracy claim in an objection to this recommendation, the Court should dismiss the civil conspiracy claims with prejudice and without leave to amend.

## IV.  CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Court **GRANT** in part, **FIND MOOT** in part, and otherwise **DENY** Defendant Abilene Independent School District's Motion to Dismiss (doc. 15) and **GRANT** in part and **DENY** in part City of Abilene's 12(b)(6) Motion to Dismiss for Plaintiffs' Failure to State a Claim Upon Which Relief May Be Granted (doc. 16).  The Court should grant both motions with respect to Plaintiffs' civil conspiracy claims.  The dismissal of those claims should be with prejudice and without leave to amend unless Plaintiffs make a sufficient showing of a viable civil conspiracy claim in an objection to this recommendation.  The Court should also grant the City's motion to the extent it seeks to dismiss municipal liability claims based on a failure to train, supervise, or discipline. Such dismissal should be without prejudice to Plaintiffs filing an amended complaint to provide additional allegations as to those claims.  The Court should find AISD's motion moot to the extent AISD seeks to dismiss similar claims and it should otherwise deny the motions.  In light of the previous recommendation issued in this action, the case has already been reassigned to Senior District Judge Sam R. Cummings in accordance with Second Amended Special Order No. 3-301.  Consistent with that special order, the undersigned may continue to exercise all powers permitted by 28 U.S.C. § 636(b) unless otherwise directed by Judge Cummings.  *See* Second Am. Special Order No. 3-301 at 2.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED this 9th day of September, 2016.**

_____

**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**