IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| E.G., by his Next Friend Vania Gonzalez, et al., | § § | |
| Plaintiffs, | § § | |
| v. | § § | No. 1:16-CV-0068-BL |
| BARRY BOND, et al., | § § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

The Court has under consideration City of Abilene's ("the City") Second 12(b)(6) Motion to Dismiss for Plaintiffs' Failure to State a Claim Upon Which Relief May Be Granted (doc. 59) (hereinafter "City's Mot.") and Defendant Abilene Independent School District's ("AISD") Second Motion to Dismiss (doc. 67) (hereinafter "AISD Mot."). The motions are fully briefed and ready for ruling. This action has been referred pursuant to 28 U.S.C. § 636(b) and the Second Amended Special Order No. 3-301, which became effective on April 26, 2016. Because the parties have not consented to have all further proceedings in this case conducted by a magistrate judge, the undersigned issues this report and recommendation and directs that this case be reassigned to Senior District Judge Sam R. Cummings in accordance with Second Amended Special Order No. 3-301.

## I. BACKGROUND[1]

Four minor[2] students (TP, EG, NM, and MD) of the Abilene Independent School District have brought this suit against a School Resource Officer ("SRO"), Barry Bond, for four separate

---

[1] The factual background is either uncontested or viewed in a light most favorable to Plaintiffs in accordance with the applicable standard for considering motions to dismiss.

[2] At the time of the events, TP was sixteen, MD was fifteen, NM was twelve, and EG was six. Pls.' Second Am. Compl. ¶ 3.

incidents in which he allegedly used unreasonable physical force and restraint against them. Pls.'
Second Am. Compl. (doc. 54) ¶ 1. Incidents occurred in March 2014, May 2014, March 2015, and
either February or March 2015. *Id.* ¶ 3. Plaintiffs further allege that the City and AISD are
municipally liable for the Officer's actions.[3] *Id.* ¶ 5.

The Court has previously considered motions to dismiss by each of the defendants. *See*
Order (doc. 50). With respect to the prior motions, the undersigned recommended that the Court dismiss Plaintiffs' civil conspiracy claims "with prejudice and without leave to amend unless Plaintiffs
ma[de] a sufficient showing of a viable civil conspiracy claim in an objection to this recommendation." *See* Report & Recommendation (doc. 34) at 26. It was further recommended that the Court
dismiss the claims of municipal liability against the City "based upon a failure to train, supervise,
or discipline . . . without prejudice to Plaintiffs filing an amended complaint to provide additional
allegations as to those claims" and find similar municipal liability claims against AISD moot. *Id.*
The undersigned recommended that the Court otherwise deny the prior motions. *Id.* The Court
adopted the recommendations "with the slight modification that Plaintiffs' conspiracy claims . . . be
dismissed without prejudice." Doc. 50 at 13-14. Plaintiffs thereafter filed their second amended
complaint to add factual allegations for the claims that had been recommended to be dismissed. *See,*
*e.g.*, Pls.' Second Am. Compl. ¶¶ 146-55 (failure to train), 156-70 (failures to discipline and
supervise), 179-86 (conspiracy).

The second amended complaint prompted the City and AISD to move to dismiss this action
against them pursuant to Fed. R. Civ. P. 12(b)(6). *See* City's Mot. at 1; AISD Br. (doc. 67-1) at 1.

---

[3]Because the Abilene Police Department ("APD") is a non-jural entity without a separate legal existence, claims
arising from conduct of the police department are properly brought against the City. *See Darby v. Pasadena Police
Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991).

Consistent with the broad dismissal sought in its motion, the City's supporting brief initially seeks dismissal of the entire action against it. *See* City's Br. Supp. at 1-2. However, its arguments merely focus on the claims previously recommended to be dismissed. *See id.* at 3-10. Moreover, its concluding request simply states: "Because Plaintiffs did not state a claim on which relief can be granted, the court should dismiss with prejudice all causes of action for Failure to Train, Failure to Supervise, Failure to Discipline, and Conspiracy against the City of Abilene, Defendant." *Id.* at 10.

Plaintiffs oppose both motions. Pls.' Resp. City's Mot. at 1-2; Pl.'s Resp. AISD Mot. at 1. In response to the City's motion, Plaintiffs argue that, because the City "does not challenge [their] allegations regarding APD's official policy, custom, or actions by a final policymaker that render APD municipally liable for the deprivations of [their] constitutional rights," such claims remain at issue in this case. Pls.' Resp. City's Mot. at 1-2. In addition, they argue that the City's arguments for dismissing their claims of conspiracy and failures to act, i.e., train, discipline, and supervise, are unpersuasive and without merit. *See id.* at 2-15. In response to the AISD motion, they argue that the Court has already concluded that they have pled sufficient facts for their municipal liability claim against AISD. Pl.'s Resp. AISD Mot. at 1. They also argue that they have pled sufficient facts for their conspiracy claim against AISD. *Id.* at 3. AISD has filed a reply in support of its motion, AISD Reply (doc. 71); AISD Br. Supp. Reply (doc. 71-1), but the City has filed no reply brief and the time for doing so has passed. The motions are ripe for ruling. In light of the prior recommendations that set out the relevant background facts for this case, this recommendation will include relevant factual allegations only as needed to address the pending motions to dismiss.

## II. APPLICABLE LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(6), the City and AISD move to dismiss claims asserted

against them.  Because AISD filed an answer (doc. 62) to the second amended complaint before

filing its second motion to dismiss, Rule 12(b)(6) is not the proper means for seeking to dismiss the

claims against it.  "Rule 12(c) provides the proper authority for seeking judgment on the pleadings

after the pleadings are closed." *Channel Source Inc. v. CTI Indus. Corp.*, No. 3:15-CV-0271-P, 2015

WL 13118198, at *1 (N.D. Tex. Oct. 26, 2015).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides a means to dismiss asserted

claims for "failure to state a claim for which relief can be granted."  The standard for Rule 12(b)(6)

motions applies even when a party seeks dismissal through a Rule 12(c) motion for judgment on the

pleadings. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).  Every pleading that states a

claim for relief must contain "a short and plain statement of the claim showing that the pleader is

entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This requirement provides opposing parties "fair notice

of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

When ruling on a Rule 12(b)(6) motion, courts generally examine only the contents of the

pleadings and any attachments thereto. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748

F.3d 631, 635 (5th Cir. 2014).  However, they "may also consider documents attached to either a mo-

tion to dismiss or an opposition to that motion when the documents are referred to in the pleadings

and are central to a plaintiff's claims." *Id.*  Furthermore, the courts accept all well-pleaded facts as

true and view them in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d

812, 816 (5th Cir. 2012).  In addition, they "draw all reasonable inferences in the plaintiff's favor."

*Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof

4

of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*,

550 U.S. at 556 (citation omitted). A plaintiff, however, must provide "more than labels and con-

clusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555;

*accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

Alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Stated succinctly, to survive dismissal under Rule 12(b)(6), the complaint must plead "enough facts

to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the miscon-
> duct alleged. The plausibility standard is not akin to a "probability requirement," but
> it asks for more than a sheer possibility that a defendant has acted unlawfully. Where
> a complaint pleads facts that are "merely consistent with" a defendant's liability, it
> "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). The alleged facts must "nudge" an asserted claim "across

the line from conceivable to plausible" to avoid dismissal under Rule 12(b)(6). *Twombly*, 550 U.S.

at 570. Courts do not focus on whether the non-movant will ultimately prevail; they instead focus

on whether that party should be permitted to present evidence to support adequately asserted claims.

*Id.* at 563 n.8.

### III. SECTION 1983

Pursuant to 42 U.S.C. § 1983, Plaintiffs bring suit against AISD and the City for excessive

force (Counts 1, 2, 3, and 5) and false arrest/unreasonable seizure (Counts 4 and 6) in violation of

the Fourth Amendment. Pls.' Second Am. Compl. ¶¶ 194-223. For each of those claims, they allege

that these defendants are municipally liable for the actions of Officer Bond. *See id.* ¶¶ 5, 124, 197-

98, 202-03, 207-08, 212-13, 217-18, 222-23. In Counts 7 and 8, they assert conspiracy claims

against the two entity defendants. *See id.* ¶¶ 224-31.

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted). To survive a motion to dismiss a § 1983 claim for alleged deprivation of constitutional rights, the plaintiff must allege that (1) a state actor, i.e., a person or entity acting under color of state law, (2) deprived the plaintiff of a federal constitutional right. *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 867-69 (5th Cir. 2012) (en banc).

A plaintiff, moreover, may hold a municipality or local government entity – such as a city or school district – liable under § 1983 "only for acts for which it is actually responsible." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (1998); *accord Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986). Municipal liability does not attach merely on a theory of respondeat superior or because an employee committed a tort. *Pembaur*, 475 U.S. at 479. Requiring a plaintiff to identify a policy or custom that caused his or her injury "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997).

## A. Claims based on Failures to Train, Discipline, or Supervise

The City moves to dismiss all claims that are based upon alleged failures to train, discipline, or supervise. *See* City's Mot. at 3-8. It argues that Plaintiffs merely make conclusory statements of custom and policy without alleging sufficient facts. City's Mot. at 4-7. With respect to the alleged failure to train, it contends that Plaintiffs allege a need for specialized training that is insufficient to

support liability, its alleged deliberate indifference must show that it disregarded a known or obvious consequence, and the facts do not show injuries caused by lack of specialized training. *Id.* at 5-6. With respect to the alleged failures to supervise and discipline, it contends that the alleged facts show that it disciplined Officer Bond, conducted performance reviews, regularly reviewed incident reports, and otherwise show that it supervised Officer Bond. *Id.* at 6-8.

The Supreme Court has noted that a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). That statement equally applies to claimed failures to supervise and discipline. Nevertheless, to survive a motion to dismiss a claim against a municipality for a claim based on a failure to act (failure to train, discipline, or supervise), the operative pleading must allege (1) inadequacy of identified procedures, (2) deliberate indifference in adopting identified policies, and (3) a direct causal link between the identified inadequate policy and alleged injuries. *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (addressing failure to train in summary judgment context); *Snow*, 501 F. Supp. 2d at 833 n.5 (recognizing that "[a]ll failure to act claims, such as Plaintiff's failure to train, supervise, and discipline claims, involve the same basic elements: inadequacy, deliberate indifference, and causation").

Plaintiffs' claims based on alleged failures to train, discipline, or supervise failed to survive the City's prior motion to dismiss because Plaintiffs did not "allege that the City was deliberately indifferent in adopting its training, supervising, or discipline procedures or programs" and did not "identify any policy or procedure regarding those matters." *See* Doc. 34 at 22; Doc. 50 at 7-9. After the dismissal of those claims without prejudice, Plaintiffs added factual allegations to remedy those pleading deficiencies. *See* Pls.' Second Am. Compl. ¶¶ 146-55 (failure to train), 156-76 (failures

7

to discipline and supervise). The parties disagree as to whether Plaintiffs now provide sufficient factual allegations to survive the instant motion to dismiss. Based on the new factual allegations in the second amended complaint, the Court should reject the City's arguments that Plaintiffs merely make conclusory statements of custom and policy. Plaintiffs' pleading provides more than labels and conclusions. Even with such rejection, other arguments and contentions warrant separate consideration.

The parties' disagreement at least partially stems from their divergent application of *City of Canton v. Harris*, 489 U.S. 378 (1989), the seminal case which definitively held that a municipality may be liable under 42 U.S.C. § 1983 for constitutional violations resulting from its failure to train municipal employees.[4]  In *Canton*, the Court reiterated well-known principles of municipality liability decided in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978): (1) "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue" and (2) neither vicarious liability nor respondeat superior will suffice to impose liability. 489 U.S. at 385. It then stated that a court's "first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Id.*  It recognized the difficulty of this inquiry and the divisions it had caused within the Supreme Court subsequent to *Monell*. *Id.* at 385-86.

To address "substantial division among the lower courts as to what degree of fault must be

---

[4]The courts have extended *Canton* to alleged failures to supervise or discipline municipal employees. *See, e.g., Hinojosa v. Butler*, 547 F.3d 285, 296 (5th Cir. 2008); *Milam v. City of San Antonio*, 113 F. App'x 622, 628 (5th Cir. 2004); *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745, 757 (5th Cir. 1993); *Snow v. City of El Paso*, 501 F. Supp. 2d 826, 833 n.5 (W.D. Tex. 2006).

evidenced by the municipality's inaction before liability will be permitted," the Court held "that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388. Like *Monell* and its progeny, the *Canton* court stressed that "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be liable for such a failure under § 1983." *Id.* at 389. To emphasize that point, the Supreme Court recognized:

> *Monell*'s rule that a city is not liable under § 1983 unless a municipal policy causes a constitutional deprivation will not be satisfied by merely alleging that the existing training program for a class of employees, such as police officers, represents a policy for which the city is responsible. That much may be true. The issue in a case like this one, however, is whether that training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy.' It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.* at 389-90 (footnotes omitted).

When addressing a claim of municipal liability, "the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *Id.* at 390. Liability does not attach merely because "a particular officer may be unsatisfactorily trained," supervised, or disciplined, or "an otherwise sound program has occasionally been negligently administered." *Id.* at 390-91. Nor "will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct."

*Id.* at 391. Likewise, it does not suffice to show that an injury could have been avoided had the officer been better supervised or disciplined. Moreover, "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Id.* Similarly, adequately supervised and disciplined officers occasionally make mistakes and those mistakes may say little about the supervision or discipline procedures. Given these other potential causes for alleged constitutional violations, the law requires that the officer's shortcomings resulted from the faulty training program (or faulty supervision or discipline procedures) to impose municipal liability for an alleged failure to act. *See id.* at 390-91 (addressing training programs only).

Plaintiffs contend that their emphasis on special training simply recognizes that the focus for SRO training must relate to the particular tasks that an SRO is expected to perform. The City, on the other hand, contends that specialized training is no more than an allegation that "better or more training" was needed. Both contentions find support within *Canton*. But as recognized in *Canton*, those competing factors are only part of the equation. Moreover, the procedural posture of a given case is often crucial to the viability of an asserted claim. For instance, courts view claims differently on a motion to dismiss versus a motion for summary judgment. The issue in this case is currently presented in the context of a motion to dismiss. That context requires courts to view well-pleaded facts as true and in a light most favorable to the plaintiff, while also drawing all reasonable inferences in the plaintiff's favor. Thus, cases addressing claims in a different procedural context may not control or may be less persuasive.

To support its contention, the City also relies on *Roberts v. City of Shreveport*, 397 F.3d 287 (5th Cir. 2005). *See* City's Mot. at 5. In *Roberts*, the Fifth Circuit specifically recognized: "Plain-

tiffs cannot prevail by styling their complaints about the specific injury suffered as a failure to train claim. In *City of Canton*, the Supreme Court specifically warned against this type of artful pleading." 397 F.3d at 293 (citing 489 U.S. at 391). In this case, Plaintiffs concede that Officer Bond received training regarding the use of force. *See* Pls.' Second Am. Compl. ¶ 148. And as was the case in *Roberts*, ultimately it may be found that the officer's "broad-based law enforcement training" adequately prepared him for his tasks as an SRO. However, whether Plaintiffs will ultimately prevail on their failure to train claim is not the issue at this stage of the litigation. From Plaintiffs' allegations the Court may reasonably assume that SRO "duty requires such special skills as to transcend *Canton*'s concern about overly narrow pleading." *See Roberts*, 397 F.3d at 293 (making such assumption as an alternative basis in the context of summary judgment). Indeed, in the context of a motion to dismiss, the Court should make that reasonable assumption or inference.

Notably, Plaintiffs' failure-to-train claim is based on four events involving a single officer. "One officer's unsatisfactory training will not establish municipal liability, because that individual's shortcomings or mistakes may have been caused by factors other than a deficient training program." *Morris v. Dallas Cnty.*, 960 F. Supp. 2d 665, 685 (N.D. Tex. 2013) (citing *Canton*, 489 U.S. at 390-91). While there may be concern that Plaintiffs are merely seeking to impose liability on the City for the acts of one SRO, their allegations are broad enough to survive summary dismissal at this stage of the litigation. They are entitled to present evidence on the claim.

With respect to Plaintiffs' claimed failures to supervise and discipline, the City makes another argument that warrants a brief discussion. More specifically, the City argues that Plaintiffs' own alleged facts show that it disciplined and supervised Officer Bond. City's Mot. at 7-8 (relying on ¶¶ 92, 94, 160, and 162 of the second amended complaint). Plaintiffs do allege that the APD

11

appraised Officer Bond's performance in 2005. *See* Pls.' Second Am. Compl. ¶ 160. They also

allege that, prior to the incidents leading to this litigation, APD officials regularly reviewed incident

reports. *See id.* ¶ 162. In addition, they allege that, in July 2015, the City investigated and sus-

pended Officer Bond for the events regarding Plaintiff NM. *See id.* ¶¶ 92, 94. These allegations do

not warrant dismissal of Plaintiffs' claims based upon alleged failures to supervise and discipline.

They do not make such claims implausible and subject to dismissal under Fed. R. Civ. P. 12(b)(6).

The 2005 appraisal occurred well before the events leading to this litigation, which occurred between

March 2014 and March 2015. Similarly, the July 2015 discipline occurred at least four months after

the events in question. Moreover, the issue is the adequacy of the identified procedures and the fact

that there are allegations of some supervision and discipline does not mandate a finding that the

identified procedures were adequate.

Despite the various arguments made by the City, the Court should find that Plaintiffs have

made factual allegations in their second amended complaint to state plausible claims based upon

failures to train, supervise, and discipline. Plaintiffs have identified training, supervision, and disci-

pline procedures that are inadequate. They have also alleged that the City was deliberately indif-

ferent in adopting the identified policies and that the inadequate policies directly caused their injur-

ies. They have alleged sufficient facts to support these allegations and do not merely rely on conclu-

sions and labels. When considering a motion to dismiss, minimal factual allegations are sufficient

to assert a municipal liability claim. *Harvey v. Montgomery Cnty.*, 881 F. Supp. 2d 785, 797 (S.D.

Tex. 2012). Indeed, when

> a plaintiff provides more than a boilerplate recitation of the grounds for municipal
> liability, and instead makes some additional allegation to put the municipality on fair
> notice of the grounds for which it is being sued, "federal courts and litigants must

rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later."

*Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 844-45 (S.D. Tex. 2011) (quoting *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993)).  The Court should find that Plaintiffs' well-pleaded facts on their failure-to-act claims are sufficient to survive the City's motion to dismiss.

## B. Municipal Liability Claim Against AISD

AISD seeks dismissal of all municipal liability claims asserted against it.  AISD Br. at 4-12.  Plaintiffs respond that the Court has already determined that they have alleged sufficient factual allegations to state a claim of municipal liability against AISD.  Pls.' Resp. AISD Mot. 6.  They also further explain how they have met their pleading burden.  *Id.* at 6-17.  In reply, AISD argues that Plaintiffs "grossly mischaracterize" the findings in the prior recommendation in this case.  AISD Br. Supp. Reply at 1.

While Plaintiffs may overstate some findings of the prior recommendation, they are correct that AISD essentially rehashes and reargues matters that were decided against it in the prior recommendation adopted by the Court.  Although Plaintiffs have filed a second amended complaint to bolster claims that were previously found insufficiently pled, that amendment does not reduce the factual allegations that were previously found sufficient to state a claim of municipal liability against AISD.  Nor does it provide a legitimate reason to revisit the municipal liability issues already decided against it for purposes of Rule 12(b)(6).

In essence, AISD seeks reconsideration of the prior rulings against it without attempting to show that any recognized factor favors reconsideration.  While Fed. R. Civ. P. 54(b) provides a

means for reconsidering prior interlocutory orders, courts may require a showing of one of the following factors to justify reconsideration: an intervening change in law; availability of previously unavailable new evidence; or a need to correct a clear legal error or to prevent manifest injustice. *Rotstain v. Trustmark Nat'l Bank*, No. 3:09-CV-2384-N, 2016 WL 8216509, at *6 (N.D. Tex. July 27, 2016). AISD neither invokes Rule 54(b) nor makes a showing of any typical factor to justify reconsideration. Nevertheless, whether to grant reconsideration lies within the sound discretion of the court even in the absence of any such showing. *Id.*

Upon reviewing AISD's motion, the relevant briefing and pleading, and the prior relevant recommendation in this case, the undersigned finds no basis to revisit the issues already decided against AISD. The Court should find that AISD's Rule 12(c) motion provides no legitimate basis for it to exercise its discretion to reconsider any prior order in this case. In addition, the Court should further find that "allowing parties an unlimited right to revisit issues raised in Rule 12(b)(6) motions via Rule 12(c) motions" would undermine judicial economy. *See In re Toyota Motor Corp. Sec. Litig.*, No. CV 10-922-DSF-AJWX, 2012 WL 3764903, at *1 (C.D. Cal. Feb. 21, 2012). Although the Federal Rules of Civil Procedure permit the filing of a Rule 12(c) motion, parties do not have "an unfettered grant to seek reconsideration of arguments already raised and lost in a previous Rule 12(b)(6) motion." *Id.* Accordingly, the Court should deny the AISD motion to the extent it seeks dismissal of municipal liability claims asserted against it.

## C. Conspiracy Claims

Plaintiffs allege that the City, acting through APD, conspired with AISD to violate their civil rights. Pls.' Second Am. Compl. ¶ 177. They allege that the entities "willfully and maliciously conspired" to deprive them of their Fourth Amendment rights. *Id.* ¶ 178. As support, they point to the

14

SRO Agreement under which the APD stationed Officer Bond at the school. *Id.* In addition, they allege that the implicit agreement between the entities is "evidenced by a course of conduct . . . specifically intended to allow Officer Bond to subject young schoolchildren . . . including Plaintiffs . . . to unreasonable and excessive force and false arrests, in violation of the Fourth Amendment." *Id.* ¶ 179.

In several paragraphs, Plaintiffs allege that AISD personnel "operated in close concert with Officer Bond," frequently called him to become involved in minor incidents with students, "watched and assisted [him] to use excessive force to discipline young schoolchildren", failed to intervene on their behalf, "volunteered to help [him] as he was assaulting and using excessive force," cooperated with him, and approved his use of excessive force. *Id.* ¶¶ 180-83, 186. They further allege that AISD knew about and approved the APD's custom of not providing training to SROs on matters specific to students. *Id.* ¶ 184. They contend that a March 3, 2015 email from the APD to AISD officials shows how closely APD and AISD worked together on the SRO program and that the two entities "specifically intended [for] Officer Bond and other SROs to become involved in minor school incidents, leading to his use of excessive force and making false arrests." *Id.* ¶ 185. They allege that "[t]hese facts, taken together, show a conspiracy between APD officials and SROs including Officer Bond, and AISD teachers and administrators, to deprive Plaintiffs of their constitutional rights to be free from excessive force and unlawful arrests." *Id.* ¶ 187.

Plaintiffs further allege that "AISD and APD worked together to respond to [their] parents' complaints and to discuss and determine their responses to Officer Bond's use of force incidents." *Id.* ¶ 188. They allege that the joint decisions to take no action to retrain or reassign Officer Bond are further evidence of their intent to continue violating constitutional rights. *Id.* In two concluding

paragraphs, they allege:

> 189. The City of Abilene, acting through APD, and AISD acted each and all together to conspire to violate the Fourth Amendment rights of Plaintiffs, and their conspiracy included agreements between or among the Defendants to allow Officer Bond to administer school discipline pursuant to unconstitutional policies, customs, and practices over the course of one or more years. As a direct result of their conspiracy, APD and AISD created and condoned an unreasonable risk of harm to schoolchildren including Plaintiffs, and effectively authorized Officer Bond's excessive force on T.P., E.G., N.M., and M.D., and false arrests of N.M. and M.D., as described above.
>
> 190. The violations of T.P.'s, E.G.'s, N.M.'s, and M.D.'s Fourth Amendment rights were not a mere coincidence, but rather part of a joint conspiracy by AISD and APD to deprive Plaintiffs of their constitutional rights. Accordingly, the City of Abilene and AISD are liable for conspiring to violate the Fourth Amendment rights of T.P., E.G., N.M., and M.D.

*Id.* ¶¶ 189-90.

Based on these allegations, they claim that the City and AISD conspired to violate their rights under the Fourth Amendment to be free from objectively unreasonable and excessive use of force and to be free from false arrests and unreasonable seizures. *Id.* ¶¶ 224-26, 228-30. Both entities move to dismiss the conspiracy claims asserted against them. *See* City's Mot. at 8-10; AISD Br. Supp. at 14-15.

Standing alone, a conspiracy claim "is not actionable under section 1983." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds, Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992). Instead, such a claim is merely "the legal mechanism through which to impose liability on each and all of the Defendants without regard to the person doing the particular act." *Id.* (citation omitted). When discussing well-established principles of civil conspiracy under the common law, the Supreme Court similarly noted with approval that a civil conspiracy is "not independently actionable; rather it is a means for establishing vicarious liability for the underlying

tort." *Beck v. Prupis*, 529 U.S. 494, 503 (2000) (quoting *Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983)).

To state a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must allege "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel*, 918 F.2d at 1187. A conspiracy claim requires an agreement "to commit an illegal act." *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982); *accord Avdeef v. Royal Bank of Scotland, PLC*, No. 4:13-CV-967-O, 2014 WL 4055369, at *3 (N.D. Tex. Aug. 15, 2014), *aff'd*, 616 F. App'x 665 (5th Cir. 2015). "'Mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy under 42 U.S.C.A. § 1983." *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986) (quoting *Arsenaux*, 726 F.2d at 1024); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (recognizing need for factual allegations rather than legal conclusions or mere recitation of elements); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (same). "The complaint must do more than indicate a possibility that a plaintiff could prove his case." *Avdeef*, 2014 WL 4055369, at *3 (citing *Iqbal*, 556 U.S. at 678). To move a claim from mere speculation to plausibility, plaintiffs must make "specific factual contentions regarding the nature of the conspiracy or the participants' roles in the same." *Avdeef v. Royal Bank of Scotland, P.L.C.*, 616 F. App'x 665, 675 (5th Cir. 2015) (per curiam).

The undersigned previously recommended that the Court dismiss Plaintiffs' conspiracy claims with prejudice and without leave to amend because they premised the claims on the SRO Agreement and had apparently stated their best case. Doc. 34 at 25-26. In accepting that recommendation, the Court agreed that, to survive a motion to dismiss, Plaintiffs must make specific factual allegations about the nature of the conspiracy and the alleged participants' role in the con-

spiracy. Doc. 50 at 10. It found that Plaintiffs had failed to plead any allegations that any defendants had made an agreement with the specific intent to violate constitutional rights. *Id.* at 10-12. It further agreed that the allegations in the first amended complaint was insufficient to state a conspiracy claim. *Id.* at 12. It found that the SRO Agreement was not an agreement to commit any illegal act and that the fact that the City and the school district worked in concert to administer the SRO program was insufficient to assert a viable conspiracy claim. *Id.*

Plaintiffs filed the previously summarized Second Amended Complaint to address the noted deficiencies. For the most part, Plaintiffs allege (1) AISD and APD entered into the SRO Agreement; (2) APD stationed Officer Bond at the school pursuant to that Agreement; (3) Officer Bond violated the constitutional rights of schoolchildren; (4) school personnel operated in concert with Officer Bond by requesting him to handle minor incidents of childish misbehaviors; and (5) school personnel acquiesced or failed to intervene while Officer Bond violated constitutional rights. Neither these factual allegations nor any others from the Second Amended Complaint appear adequate to state a plausible conspiracy claim against either AISD or the City. Plaintiffs allege that an email shows a close working relationship between the APD and AISD and their specific intent for SROs to become involved in minor student incidents, but such intent is a far cry from a specific intent to commit an illegal act and it is an implausible leap to go from that intent to a specific intent to use excessive force and make false arrests.

The Court has already found that the SRO Agreement and the entities working in concert to administer the program is not sufficient to state a viable conspiracy claim. While Plaintiffs have added a lot of text to their allegations, they remain light on facts. They still primarily premise the conspiracy claims on the SRO Agreement and the working relationship between the two entities, but

they fail to allege sufficient facts of any agreement to commit an illegal act. They attempt to twist

the facts into an implicit agreement to commit an illegal act, but they have not alleged facts to nudge

these claims from conceivable to plausible even assuming that the claims rise to the level of con-

ceivability on the alleged facts. Essentially, Plaintiffs speculate that the City and AISD entered into

a conspiracy to violate the constitutional rights of AISD students. Because the alleged facts do not

provide an adequate basis to infer more than a mere possibility of misconduct, the Court should find

the conspiracy claims implausible and dismiss them.

The circumstances of the alleged conspiracy also presents an additional concern that neither

side addresses. In *Beck*, the Supreme Court characterized a civil conspiracy as a means for estab-

lishing vicarious liability, *see* 529 U.S. at 503, but it is a staple of municipal liability law that a

municipality cannot be found vicariously liable under § 1983, *see City of Canton v. Harris*, 489 U.S.

378, 385 (1989). To permit a municipality to be found vicariously liable through a conspiracy claim

seems contrary to *City of Canton*. Because a municipality cannot be vicariously liable for the actions

of an employee, the Court may alternatively find that the conspiracy claims against AISD and the

City fail to state a claim upon which relief can be granted on this basis.

For all of these reasons, the Court should grant the motions to dismiss to the extent AISD and

the City seek dismissal of the conspiracy claims.

## D.  Other Claims Against the City

The City seeks dismissal of all claims against it, but asserts substantive arguments only with

respect to Plaintiffs' claims based on conspiracy and failures to act. Arguments made in mere pass-

ing do not warrant substantial consideration or discussion. Furthermore, when addressing the City's

prior motion to dismiss, the Court found Plaintiffs' factual allegations in their first amended com-

plaint sufficient to state a claim except with respect to claims of conspiracy and failures to train, discipline, and supervise. Plaintiffs' second amended complaint adds factual allegations to the prior complaint rather than subtracting or omitting factual allegations. Accordingly, the Court should deny the City's motion to the extent the City seeks to dismiss any claim that survived the prior motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Court **GRANT** in part and **DENY** in part City of Abilene's Second 12(b)(6) Motion to Dismiss for Plaintiffs' Failure to State a Claim Upon Which Relief May Be Granted (doc. 59) and **GRANT** in part and **DENY** in part Defendant Abilene Independent School District's Second Motion to Dismiss (doc. 67). The Court should grant both motions with respect to Plaintiffs' civil conspiracy claims, but otherwise deny the motions. In light of the recommended partial dismissal, the undersigned directs the Clerk of Court to reassign this case to Senior District Judge Sam R. Cummings in accordance with the Second Amended Special Order No. 3-301. After that reassignment, the undersigned may continue to exercise all powers permitted by 28 U.S.C. § 636(b) unless otherwise directed by Judge Cummings. *See* Second Am. Special Order No. 3-301 at 2.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An

objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED this** _29th_ **day of June, 2017.**

E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**

21